UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DAVID W. PARROTT                                                              Plaintiff

v.                                                          Civil Action No. 3:23-cv-593-RGJ

GEMINI DIRECT, LLC d/b/a CREDIT
INNOVATION GROUP                                                             Defendant

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendant Gemini Direct, LLC d/b/a Credit Innovation Group ("Gemini") moves to transfer this action under 18 U.S.C. § 1404(a) to the United States District Court for Utah. [1] [DE 5, Def.'s Mot. Trans.]. Plaintiff David W. Parrott ("Parrott") responded and filed a supplement to his response. [DE 6, Pl.'s Resp. Mot. Trans.; DE 7, Suppl.]. No reply was filed, and the time to do so has passed. Therefore, the matter is ripe for adjudication. The Court **DENIES** Defendant's Motion to Transfer Venue for the reasons below.

## I.      BACKGROUND

This action arises from Parrott's claim against Gemini for unlawful conduct under the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq*. The CROA is intended to, "(1) ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such service" and "(2) protect the public from unfair or deceptive advertising and business practices by credit repair organization." 15 U.S.C. § 1679a. Gemini is a "credit repair organization" under § 1679a(3) because Gemini offers credit repair services. [DE 1].

---

[1] The Joint Local Rules for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum. *See* Local Rule 7.1. Going forward, counsel is advised to file a unified motion.

In February 2023, Parrott entered into a Credit Innovation Group Retainer Agreement ("the Agreement") with Gemini to repair his credit score. [DE 1 Comp. at 2]. Parrot asserts that under the Agreement, he paid $179 monthly after an initial $179 set-up fee.[2] [*Id.*] Parrott alleges that for this fee Gemini "promised" to repair Parrott's credit score, increase Parrott's credit score to 800, and help Parrott qualify for a home "within 6 months" of using Gemini's services. [*Id.* at 2.] Parrott now brings suit alleging that Gemini violated the CROA and seeking damages. [DE 1 at 3]. Parrott alleges that Gemini failed to "get [Parrott's] credit score up to 800 after 6 months" and to "get rental payments reported on [Parrott's] credit in a positive manner." [*Id.*] Additionally, Parrot's credit score decreased while using Gemini's services. *Id.*

Now, Gemini moves to transfer venue asserting that the Western District of Kentucky is the improper venue because Parrott signed the Agreement with Gemini, which included a forum selection clause. [*Id.*]. [DE 5, Def.'s Mot. Trans.]. This forum selection clause states, "Any legal actions shall be initiated only in Salt Lake County, Utah. You and the Company agree to submit to the personal and exclusive jurisdiction of courts located within Salt Lake County, Utah." [*Id.* at 3.] Gemini asserts, "Because the claims arise under and related to the Agreement, they must be asserted in either Salt Lake County, Utah, or the Federal District of Utah." [*Id.* at 4.]

Parrott opposes the motion, arguing that the Agreement is void and unenforceable, and therefore, the forum selection clause is void and unenforceable under the CROA. [DE 6, Pl.'s Resp. Mot. Trans.]. Parrott also argues that "even if the contract is valid and enforceable, extraordinary circumstances exist such that [Gemini]'s motion should be denied." [*Id.* at 5.]

---

[1] Yet the Agreement provided by Gemini to the Court states, "CIG Platinum Services set up fee is $179 then 5 additional monthly payments of $129." [DE 5-1].

## II.    STANDARD

A motion to transfer according to a contractual forum-selection clause is properly viewed as a motion to transfer venue under 28 U.S.C. § 1404(a).  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. Of Tex.*, 571 U.S. 49, 52 (2013).  But a valid and enforceable forum-selection clause alters the type of 28 U.S.C. § 1404(a) analysis applied in three ways.  *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 213, 216 (6th Cir. 2021).  First, "the choice of forum merits no weight."  *Id*.  "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests."  *Id*. at 64.  "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice of law rules – a factor that in some circumstances may affect public-interest considerations."  *Id* (citations omitted).  In other words, the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum."  *Atl. Marine Constr. Co.*, 571 U.S. at 64.

"A forum selection clause should be upheld absent a strong showing that it should be set aside."  *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).  When determining whether the forum selection clause should be upheld, the court must first determine whether the forum selection clause is "mandatory, valid, and enforceable."  *Lakeside*, 16 F.4th at 219. Then the court will "weigh the public and private interest factors."  *Id.* (citation omitted).

Interpretation of a forum selection clause is governed by federal law.  *Wong*, 589 F.3d at 827-28. The Court looks to the following factors, when evaluating the enforceability of a forum selection clause: (1) whether the clause was obtained by fraud, duress, or other unconscionable

3

means; (2) whether the designated forum would ineffectively or unfairly handle the suit; (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust; or (4) enforcing the forum selection clause would contravene a strong public policy of the forum state. *Lakeside*, 16 F.4th at 219 (citing *Wong*, 589 F.3d at 828). The burden falls on the plaintiff to show that the public-interest factors defeat dismissal. *Id.* at 215.

If the Court determines it cannot enforce the forum selection, then the Court analyzes the motion to transfer venue under 28 U.S.C. § 1404(a). *Lakeside*, 16 F.4th at 216.

## III.   DISCUSSION

A. <u>Enforceability of the Forum Selection Clause</u>

At the outset, Gemini did not respond to any of the arguments raised by Parrott in opposition to its motion to transfer venue. Thus, any arguments in opposition appear to have been waived. *Allstate Ins. Co. v. Glob. Med. Billing, Inc*., 520 F. App'x 409, 412 (6th Cir. 2013) ("Plaintiff's failure to respond to Defendants' attack on its standing and its failure to refute the assertion that it had been fully reimbursed amounts to a waiver of the argument . . ."). Nonetheless, Parrott's arguments are analyzed below.

Parrott disputes the forum-selection clause's enforceability and invokes only the first and fourth factor found in *Lakeside*. [DE 6]. Under the first *Lakeside* factor, the party opposing the forum selection clause must show fraud in the inclusion of the clause itself. *See, e.g.*, *Wong*, 589 F.3d at 829; *Lakeside*, 16 F.4th at 219. "A valid forum selection clause must not be the product of fraud or overreaching." *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 722 (6th Cir. 2006). And a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause. *Moses v. Bus Card Express*, 929 F.2d 1131, 1138 (6th

Cir. 1991). Instead, the claim of fraud or misrepresentation must be directly related to the forum selection clause. *Id.*

Parrott argues that the Agreement "was a clear instance of contract adhesion" because the provisions concerning the choice of venue "were part of boilerplate terms and conditions" which Parrott could not individually negotiate. [DE 6 at 6-7]. Parrott asserts that he was fraudulently induced because Parrott was unaware when he agreed to the forum selection clause that Gemini was in bad standing with the AAA and because the Agreement mandates jurisdiction in Utah while also mandating disputes be arbitrated under the AAA. [*Id.* at 7]. As noted above, Gemini did not respond to this assertion and the Court could treat any opposition as waived. *Allstate,* 520 F. App'x at 412. But, the Court need not analyze this issue because the Agreement is unenforceable under the fourth *Lakeside* factor discussed below.

Under the fourth *Lakeside* factor, Parrott must show that "enforcing the forum selection clause would contravene a strong public policy of the forum state." *Lakeside*, 16 F.4th at 219. A "strong public policy" can be determined by either statute or judicial decision. *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 543 (6th Cir. 2002). Parrott argues that the forum-selection clause is unenforceable because the Agreement is void under the CROA. [DE 6 at 3-5]. Parrott asserts that the Agreement, on its face, fails to apply with applicable requirements under 15 U.S.C. § 1679d(b). These relevant requirements include:

"(b) No contract referred to in subsection (a) meets the requirements of this subsection unless such contract includes (in writing) -

(1) [T]he terms and conditions of payment, including the total amount of all payments to be made by the consumer to the credit repair organization or to any other person;

(2) [A] full and detailed description of the services to be performed by the credit repair organization for the consumer, including—

b.      [A]n estimate of—

****

     ii.     [T]he length of the period necessary to perform such services;

****

(4) [A] conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'"

15 U.S.C.S. § 1679d.  Under the CROA, "[a]ny contract for services which does not comply with the *applicable provision*s of this title, (1) shall be treated as void; and (2) may not be enforced by any Federal or State court or any other person."  15 U.S.C. § 1679f(c) (emphasis added).[3]  And although the Sixth Circuit has not ruled on if whether a violation of the 15 U.S.C. § 1679d(b) provisions render an agreement void, other district courts have found agreements to be void when deciding summary judgment.  *See Taylor-Burns v. AR Res., Inc.*, 268 F. Supp. 3d 592, 597 (S.D.N.Y. 2017) ("The CROA makes any contract not in compliance with the CROA void and unenforceable.").

Under 15 U.S.C. § 1679d(b)(1) the Agreement must include, "[T]he terms and conditions of payment, including the total amount of all payments to be made by the consumer to the credit

---

[3] There is some discrepancy over whether this provision is limiting the scope to the subchapter or expanded to include the title. Pursuant to the statute at large, the language is "title" and therefore, this provision encompasses the whole CROA. *See* Making omnibus consolidated appropriations for the fiscal year ending September 30, 1997, and for other purposes, Pub. L. No. 104-208, 104 Cong. 110 Stat. 3009 (1996).

repair organization or to any other person." Parrott asserts that "the Agreement does not provide the total amount of all payments to be made, instead setting a monthly rate for payments to be made over an indefinite period of time." [DE 5-1]. Here, the Agreement includes two provisions regarding the amount of payment. [*Id*.] The first provision states, "The CIG Membership fee is $19.99 per month for as long as you choose to remain a member." [*Id*.] The second provision says, "CIG platinum Services set up fee is $179 then 5 additional monthly payments of $129. You will become a Certified Platinum Member after making all 6 payments." [*Id*.] Even though one provision explicitly includes a set number of payments, the other provision includes a "$19.99 per month fee" indefinitely. [*Id*.] Thus facially, it is unclear whether there is a "total amount of all payments to be made" included in the Agreement, when one of the required payments could continue perpetually. 15 U.S.C. § 1679d(b)(1).

15 U.S.C. § 1679d(b)(2)(ii) also provides that the Agreement must contain a "full and detailed description of the services to be performed" by the credit repair organization, including "the length of the period necessary to perform such services." Here, the Agreement does not include a timeline in which Parrott can expect services to be performed. Instead, the Agreement states, "We cannot . . . accurately predict how long the process will take." [DE 5-1]. On its face, this statement does not comply with the CROA because saying that you cannot predict a timeline does not equate to including "the length of the period necessary to perform such services" within the Agreement. *See* 15 U.S.C. § 1679d(b)(2)(ii).

Furthermore, 15 U.S.C. § 1679d(b)(4) requires the Agreement to include "[A] conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed

7

the contract. See the attached notice of cancellation form for an explanation of this right.'"  And although the Agreement provided by Gemini does include a provision that states, "You, the buyer, may cancel this contract at any time prior to midnight on the fifth day after the date of the transaction. See the attached notice of the cancellation form for an explanation of this right," this provision is neither in "bold face type" nor did Gemini provide this Court the "attached notice of cancellation form" as required by § 1679d(b)(4).  [DE 5-1].   Additionally, the signature page was not provided by either party, and so this Court cannot determine whether the notice was given "in immediate proximity to the space reserved for the consumer's signature."  For these reasons, the Agreement cannot be considered facially in compliance with 15 U.S.C. § 1679d(b).  And Gemini failed to respond to the arguments raised by Parrott or provide evidence to suggest otherwise. Therefore, on its face, based on the information in the record and for purposes of ruling on Gemini's motion, the Agreement appears to violate the CROA. As stated above, the Court may not enforce the Agreement if it does not comply with the applicable provisions of the CROA.  15 U.S.C. § 1679f(c); *See also, e.g.*, *Smith v. The Ferncliff*, 306 U.S. 444, 450 (1939) ("Courts may void contracts that violate law or public policy."); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 438 (6th Cir. 2008); *Martello v. Santana*, 713 F.3d 309, 313 (6th Cir. 2013).

The Agreement includes a severability clause.  [DE 5-1].  Generally, an unlawful contract provision may be severed from the rest of the contract, leaving the rest of the provisions enforceable.  *Slinger v. Pendaform Co.*, 779 F. App'x 378, 381 (6th Cir. 2019).  But here, the CROA specifies that the entire contract must be treated as void and may not be enforced, where the provisions discussed above are not met.  *See* 15 U.S.C. § 1679f(c).  Further, Gemini declined to respond to Parrott's argument that the Agreement is void and provides the Court with no support for severing the forum selection clause, thus that argument is waived. *Allstate*, 520 F. App'x at

412.    In short, based on the information provided, the Court cannot enforce the Agreement for

purposes of Gemini's motion.  *See Taylor-Burns*, 268 F. Supp. 3d at 597.

   B.   Convenience Transfer Under 1404(a)

       Having determined the Court cannot enforce the forum selection clause, the Court turns to

the forum-non-conveniens analysis.  *Lakeside*, 16 F.4th at 216. 28 U.S.C. § 1404(a) provides that

"for the convenience of the parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought."  Under

28 U.S.C. § 1404(a), "[t]o establish whether transfer is proper, the movant must demonstrate: (1)

the transferee court is one in which the action could have been brough initially; and (2) a transfer

would serve the convenience of the parties and witnesses and otherwise promote the interests of

justice." *Payment All. Int'l, Inc. v. Deaver*, No. 3:17-CV-693-TBR, 2018 WL 661491, at *5 (W.D.

Ky. Feb. 1, 2018) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).  A decision on whether

to transfer lies within the trial court's broad discretion.  *Bunting ex rel. Gray v. Gray*, 2 Fed. App'x

443, 448 (6th Cir. 2001).

       First, this Court must consider whether the "transferee court is one in which the action

could have been brought initially."  28 U.S.C. § 1404(a).  Because Gemini's principal place of

business is in Utah, this claim could have been initially brought in Utah. As a result, the court then

examines "whether, on balance, a transfer would serve 'the convenience of the parties and

witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine.*, 571 U.S. at 63 (citing 28

U.S.C. § 1404(a)).  Generally, this step is altered by a valid forum selection clause, but because,

as earlier discussed, the Court cannot enforce the Agreement based upon the information

presented, and thus, the forum selection clause is no longer given "controlling weight."  *See*, *e.g.*,

*id*. at 62-63; *Taylor-Burns*, 268 F. Supp. 3d at 597.  Thus, the burden remains on the moving party

to prove by the preponderance of evidence that transfer under 28 U.S.C. § 1404(a) is appropriate. *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003).

Courts within the Sixth Circuit have identified nine factors that the Court should consider in determining whether a transfer would serve the convenience of the parties and witnesses and otherwise promote the interest of justice. *Pharmerica Corp. v. Crestwood Care Ctr., L.P.*, No. 3:12-CV-00511-CRS, 2013 WL 5425247, at *1 (W.D. Ky. Sept. 26, 2013). These factors include: (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight granted plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Id.* To determine whether transfer is in the interest of justice, the Court must examine the relevant facts under the nine factors. *Id.* The relevant factors are discussed below:

## I.   *Convenience of the Witnesses*

All the witnesses, besides Parrott, who the parties have identified, are in Utah. [DE 4 at 5]. The convenience of non-party witnesses is given more weight than party witnesses. This factor supports transfer. *Pharmerica*, 2013 WL 5425247, at *2. Therefore, this factor favors moving this action to Utah.

## II.   *Relative Ease of Access to Evidence*

Technology has expedited information transmission. As a result, this factor is a minor concern. *Id.* at *7. Here, the only non-testimonial evidence consists of the agreement, emails, and other tangible or electronic documents, and it would be easy to access these sources of proof in

both forums. *See id*. Therefore, this factor supports keeping the case in the Western District of Kentucky.

### III. Convenience of the Parties

Parrott resides in Louisville, Kentucky. [DE 1 at 2]. Given Gemini's willingness to conduct affairs in the Western District of Kentucky, it is unlikely that Gemini will be inconvenienced by keeping this case in this Court. [*Id*.] Gemini has not provided evidence that litigating this case in the Western District of Kentucky would be significantly inconvenient.

### IV. Locus of Operative Facts

The locus of operative facts includes facts that indicate how the harm came to be and facts included in "the focal point of the story." *Calder v. Jones*, 465 U.S. 783, 784 (1984). For example, the locus of operative facts includes where the Agreement was signed, where majority of the services were rendered, and where the harm occurred. Although the Agreement that states it is "deemed to have been executed and performed exclusively in the State of Utah," [DE 5-1], the Agreement is not unenforceable, as discussed above. Parrott signed the agreement in Kentucky and received Gemini's services in Kentucky, and the contract at issue was executed and performed in important part in the Western District of Kentucky. [DE 1 at 2-3]. Thus, the locus of operative facts supports litigating in this Court.

### V. The Forum's Relative Familiarity with Applicable Law

When a case is transferred via 28 U.S.C. § 1404(a), the law of the transferor court applies. *K-Tex, LLC v. Cintas Corp.*, 693 F. App'x 406, 409 (6th Cir. 2017). There is a choice-of-law provision in the agreement that states it is "deemed to have been executed and performed exclusively in the State of Utah . . ." [DE 5-1]. But the Agreement appears to be void and unenforceable, as discussed above. *Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717,

11

719 (Ky. 1982). Kentucky law provides that contract disputes are governed by the state's law with the most significant relationship to the contract. *Id.* This factor favors the venue remaining in the Western District of Kentucky.

### VI. The Weight Accorded to Plaintiff's Choice of Forum

The "plaintiff's choice of forum should rarely be disturbed . . . unless the balance [of convenience] is strongly in favor of the defendant." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Because Gemini has not provided evidence that this forum causes, the balance of convenience to strongly favor Parrott, Parrott's choice of forum should be considered a factor weighing against transfer. *See id.*

### VII.    Trial Efficiency and the Interest of Justice

The efficiency of resolving the case in either Utah or Kentucky is identical, and no party has provided any evidence to suggest otherwise. Thus, this factor does not favor either transferring or not transferring. Additionally, only Parrott put forth assertions that advance public interest. Parrott asserts that the claims should proceed in the Western District of Kentucky "due to the existence of extraordinary circumstances." [DE 5 at 5]. Parrott argues that "[Gemini's] conduct surrounding [Parrott's] failed efforts to bring his claims in arbitration, and implications therefrom, underscore the existence of extraordinary circumstances justifying the denial of [Gemini's] motion." [ *Id*.] For this reason, the interest of justice factor weighs in favor of not transferring.

Overall, the factors weigh against transfer and Gemini's motion will be denied on this basis as well.

## IV.    CONCLUSION

In sum, Parrott raises valid arguments as to whether the Agreement is enforceable. Gemini did not oppose and thus waived opposition to these arguments. As a result of Gemini's waiver,

and the Court's own analysis of the information and law presented, the Court cannot enforce the forum selection clause.  Further, the nine factors discussed above weigh against a transfer of venue. Thus, Gemini's Motion to Transfer Venue [DE 5] is **DENIED.**  This Court will issue a separate order referring the case to the Magistrate Judge for a Fed. R. Civ. P. 16 conference.

Rebecca Grady Jennings, District Judge
United States District Court

February 15, 2024